UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

REBECCA SUE MURPHY,                )
                                   )
        Plaintiff,                 )
                                   )
    v.                             )        CIVIL NO.  1:18cv118
                                   )
NANCY A. BERRYHILL, Acting         )
Commissioner of Social Security,   )
                                   )
        Defendant.                 )

OPINION AND ORDER

This matter is before the court for judicial review of a final decision of the defendant Commissioner of Social Security Administration denying Plaintiff's application for Disability Insurance Benefits (DIB), as provided for in the Social Security Act.  Section 205(g) of the Act provides, inter alia, "[a]s part of his answer, the [Commissioner] shall file a certified copy of the transcript of the record including the evidence upon which the findings and decision complained of are based.  The court shall have the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the case for a rehearing."  It also provides, "[t]he findings of the [Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive. . . ."  42 U.S.C. §405(g).

The law provides that an applicant for DIB must establish an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to last for a continuous period of no less than 12 months. . . ."  42 U.S.C. §416(i)(1); 42 U.S.C. §423(d)(1)(A).  A physical or mental impairment is "an

impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §423(d)(3). It is not enough for a plaintiff to establish that an impairment exists. It must be shown that the impairment is severe enough to preclude the plaintiff from engaging in substantial gainful activity. *Gotshaw v. Ribicoff*, 307 F.2d 840 (7th Cir. 1962), cert. denied, 372 U.S. 945 (1963); *Garcia v. Califano*, 463 F.Supp. 1098 (N.D.Ill. 1979). It is well established that the burden of proving entitlement to disability insurance benefits is on the plaintiff. *See Jeralds v. Richardson*, 445 F.2d 36 (7th Cir. 1971); *Kutchman v. Cohen*, 425 F.2d 20 (7th Cir. 1970).

Given the foregoing framework, "[t]he question before [this court] is whether the record as a whole contains substantial evidence to support the [Commissioner's] findings." *Garfield v. Schweiker*, 732 F.2d 605, 607 (7th Cir. 1984) citing *Whitney v. Schweiker*, 695 F.2d 784, 786 (7th Cir. 1982); 42 U.S.C. §405(g). "Substantial evidence is defined as 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rhoderick v. Heckler*, 737 F.2d 714, 715 (7th Cir. 1984) quoting *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1410, 1427 (1971); *see Allen v. Weinberger*, 552 F.2d 781, 784 (7th Cir. 1977). "If the record contains such support [it] must [be] affirmed, 42 U.S.C. §405(g), unless there has been an error of law." *Garfield*, *supra* at 607; *see also Schnoll v. Harris*, 636 F.2d 1146, 1150 (7th Cir. 1980).

In the present matter, after consideration of the entire record, the Administrative Law Judge ("ALJ") made the following findings:

1. The claimant meets the insured status requirements of the Social Security Act through September 30, 2016.

2. The claimant has not engaged in substantial gainful activity since March 31, 2011 (Ex. 7D, 8D, 9D, 10D), the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).

3. The claimant has the following severe impairments: degenerative joint disease in both of her knees, discogenic and degenerative changes in the lumbar spine, degenerative changes in the cervical spine, supraventricular tachycardia, peripheral artery disease, and obesity (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except that she is able to stand/walk for a total of just 2 hours in an eight-hour period and occasionally climb, balance, stoop, kneel, crouch, and crawl.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7. The claimant was born on September 16, 1960 and was 50 years old, which is defined as an individual closely approaching advanced age, on the alleged disability onset date. The claimant subsequently changed age category to advanced age when she attained age 55 in September 2015. Her age category has not changed otherwise (20 CFR 404.1563 and 416.963).

8. The claimant has a limited education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. The claimant has acquired work skills from past relevant work (20 CFR 404.1568 and 416.968).

10. Considering the claimant's age, education, work experience, and residual functional capacity, the claimant has acquired work skills from past relevant work that are transferable to other occupations with jobs existing in significant numbers in the national economy (20 CFR 404.1569, 404.1569(a), 404.1568(d), 416.969, 416.969(a), and 416.968(d)).

11. The claimant has not been under a disability, as defined in the Social Security Act, from March 31, 2011, through the date of this decision (20 CFR 404.1520(g) and

416.920(g).

(Tr. 13- 22  ).

Based upon these findings, the ALJ determined that Plaintiff was not entitled to disability insurance benefits. The ALJ's decision became the final agency decision when the Appeals Council denied review.  This appeal followed.

Plaintiff  filed her opening brief on October 25, 2018.  On January 23, 2019, the defendant filed a memorandum in support of the Commissioner's decision, to which Plaintiff replied on January 31, 2019. Upon full review of the record in this cause, this court is of the view that the ALJ's decision should be remanded.

A five step test has been established to determine whether a claimant is disabled.  *See Singleton v. Bowen*, 841 F.2d 710, 711 (7th Cir. 1988); *Bowen v. Yuckert*, 107 S.Ct. 2287, 2290-91 (1987).  The United States Court of Appeals for the Seventh Circuit has summarized that test as follows:

> The following steps are addressed in order:  (1)  Is the claimant presently unemployed?  (2)  Is the claimant's impairment "severe"? (3)  Does the impairment meet or exceed one of a list of specific impairments?  (4)  Is the claimant unable to perform his or her former occupation?  (5)  Is the claimant unable to perform any other work within the economy?  An affirmative answer leads either to the next step or, on steps 3 and 5, to a finding that the claimant is disabled.  A negative answer at any point, other than step 3, stops the inquiry and leads to a determination that the claimant is not disabled.

*Nelson v. Bowen*, 855 F.2d 503, 504 n.2 (7th Cir. 1988); *Zalewski v. Heckler*, 760 F.2d 160, 162 n.2 (7th Cir. 1985); accord *Halvorsen v. Heckler*, 743 F.2d 1221 (7th Cir. 1984).  From the nature of the ALJ's decision to deny benefits, it is clear that Step 5 was the determinative inquiry.

Plaintiff was born on September 16, 1960 and was 56 years-old on the date that the ALJ issued her decision. In March 2011, Plaintiff presented for treatment of knee pain and lower extremity swelling. (AR 724.) Examination revealed lower extremity edema. *Id*. Doctors prescribed the main medication methadone and the muscle relaxant Flexeril. *Id.* In April 2011, doctors observed that Plaintiff was shaking, gritting her teeth, was tearful, and presented with a racing heart. (AR 722.) Doctors prescribed the antidepressant Lexapro and the anti-anxiety medication Xanax. *Id.* She developed increasingly severe back pain in May 2011. (AR 720.) Her depression persisted in mid-2011 and doctors prescribed the antidepressant Elavil. (AR 711.) In November 2011, she presented with chest pain, dyspnea on exertion, and tachycardia. (AR 645.) An echocardiogram (ECG) reflected concentric left ventricular hypertrophy with impaired diastolic function. (AR 647.) Examination in December 2011 confirmed lower extremity edema. (AR 715.) A December 2011 pulmonary function test demonstrated decreased mid-expiratory flows and decreased diffusion capacity which could have been a component of anatomic emphysema. (AR 628.)

In January 2012, doctors diagnosed supraventricular tachycardia after Plaintiff presented with a rapid heart rate. (AR 631.) An ECG suggested possible left ventricular enlargement. (AR 639.) Examination in March 2012 revealed tenderness to palpation over the lumbar spine. (AR 712.) Doctors prescribed the narcotic pain medication Vicoprofen, for Plaintiff had recently tapered off of methadone. (AR 712.) A July 2012 MRI of the lumbar spine confirmed disc bulge with facet arthropathy and bilateral foraminal narrowing at L3-L4, disc bulge with foraminal narrowing at L4-L5, and facet arthropathy at L5-S1. (AR 652.) A July 2012 x-ray of the knees reflected marked medial compartmental joint space narrowing and tricompartmental osteophytes.

(AR 666.) Plaintiff presented at a neurological clinic in October 2012 for treatment of severe headaches. (AR 787.) She suffered incapacitating headaches that lasted for two-to-three days, up to three occasions each month. *Id.* She attempted to lie down when the headaches occurred but the pain often interrupted her sleep. *Id.* Additionally, the headaches produced impaired concentration and decreased appetite. *Id.* Doctors diagnosed migraine headache with aura and prescribed the migraine headache medication Topamax. (AR 788.) Doctors increased her dosage of Xanax in April 2015, for she continued to suffer progressive anxiety. (AR 897.) Plaintiff developed left shoulder and neck pain in January 2016. (AR 917.) A chest x-ray that doctors performed that month revealed a tortuous aorta. (AR 921.)

Plaintiff experienced an exacerbation of sciatica in February 2016 and she was unable to sit or to lie on the left side for almost two weeks. (AR 924.) A March MRI of the lumbar spine confirmed annular disc bulge with foraminal narrowing at L2-L3; degenerative annular disc bulge, ligamentous hypertrophy, and foraminal narrowing at L3-L4; marked degenerative annular disc bulge, ligamentous hypertrophy, and broad-based central disc protrusion that produced degenerative canal stenosis at L4-L5; and annular disc bulge and foraminal narrowing at L5-S1. (AR 878.) In April 2016, doctors noted that pain radiated down the left sciatic nerve from the lower back. (AR 937.) A May 2016 x-ray of the left knee confirmed degenerative changes. (AR 941.) In June 2016, Plaintiff developed pain that was consistent with femoral cutaneous nerve pain. (AR 945.) Examination in June 2016 demonstrated pain that radiated into the legs and paresthesias of the femoral cutaneous nerves. (AR 958.) Examination in September 2016 reflected tenderness to palpation over the lumbar paraspinal musculature, abnormal and decreased lumbar range of motion, positive Waddell signs, and breakaway weakness with ankle dorsiflexion

testing. (AR 1037.) Examination of the knees in September 2016 revealed pain with forced flexion and forced extension as well as patella crepitation. (AR 1040.) Doctors performed steroid injections. *Id.*

Consultative physician Dr. H.M. Bacchus, M.D., examined Plaintiff at the Commissioner's request in August 2011. (AR 583-86.) Dr. Bacchus observed that Plaintiff moved slowly and demonstrated difficulty getting on and off of the examination table, which Plaintiff attributed to leg weakness. (AR 584.) Examination revealed ankle edema; tenderness to palpation over the cervical and lumbosacral spine; antalgic gait, inability to heel or tandem walk; difficulty walking on the toes; positive straight leg raise test; diminished range of motion of the neck, wrists, lower back, knees, and hips; tenderness to palpation over the knees; diminished muscle strength and tone in the lower extremities; diminished grip strength; positive Tinel's sign; slow and clumsy fine and gross dexterity on the left; and flat affect and depressed mood. (AR 584.) An x-ray of the cervical spine that Dr. Bacchus ordered revealed narrowing of the C5-C6 and C6-C7 disc spaces with bony changes that were consistent with spondylosis. (AR 590.) Dr. Bacchus opined that Plaintiff retained the capacity to perform light duties on a part-time basis. (AR 585.) She could stand for two-to-three hours non-continuously in a four-to-six-hour workday. *Id.* Dr. Bacchus believed that she may have experienced difficulty with repetitive squatting, bending, climbing, and fine and gross dexterity on the left. *Id.*

Dr. Bacchus again examined Plaintiff at the Commissioner's request in December 2014. (AR 791-93.) Dr. Bacchus observed that Plaintiff moved slowly on and off of the examination table and required the assistance of a cane. (AR 792.) Examination revealed pitting edema of the distal extremities; tenderness to palpation of the lumbar spine; reduced range of motion of the

lumbar spine; hip tenderness; positive straight leg raise test (AR 792); antalgic gait; inability to perform heel gait on the right; inability to hop; diminished range of motion of the neck, knees, hips, and ankles; tenderness and crepitus in the knees; diminished muscle strength and tone; poor-to-fair sustainability of gait without the use of a cane; and flat affect and anxious mood. (AR 793.) Dr. Bacchus opined that Plaintiff suffered limitations in prolonged standing and walking; repetitive bending, lifting, squatting, and climbing; and any kneeling and crawling. (AR 793.)

Consultative physician Dr. David Ringel, D.O., examined Plaintiff at the Commissioner's request in September 2012. (AR 668-71.) Dr. Ringel noted that Plaintiff stood from the chair slowly and slowly got on and off of the examination table. (AR 669.) Examination reflected edema of the lower extremities; diminished grip strength; spasms of the thoracic and lumbar musculature; lumbar, lumbosacral, sacroiliac, and right knee pain; diminished cervical and lumbar range of motion; positive straight leg raise test; inability to walk on the toes or stand on the heels; and inability to squat. (AR 670.)

Consultative psychologist Dr. Rodney Timbrook, Ph.D., examined Plaintiff at the Commissioner's request in July 2011. (AR 577-81.) Plaintiff related past attempts at suicide and a dislike of being around others. (AR 577.) She appeared easily embarrassed when she discussed her limitations. (AR 578.) She displayed dysphoria during the examination, her affective expression was intense, and she demonstrated above normal reactivity of affect. *Id.* She related depressed mood, impaired sleep, fatigue, lack of energy, feelings of guilt and worthlessness, and crying spells. (AR 579.) She could not perform the serial sevens examination. (AR 580.) Dr. Timbrook diagnosed dysthymic disorder. (AR 581.)

Consultative psychologist Dr. Andrew Miller, Psy.D., examined Plaintiff at the

Commissioner's request in September 2012. (AR 674-77.) Plaintiff admitted suicidal ideation. (AR 675.) She described suffering panic attacks which were characterized by difficulty breathing and increased heart rate. *Id*. These attacks were triggered by being around other individuals. *Id*. Plaintiff committed seven errors when she attempted to perform the serial sevens examination. (AR 676.) Dr. Miller believed that Plaintiff's daily routines were not well established (AR 676) and that her ability to sustain activities of daily living were impaired. (AR 677.) Dr. Miller diagnosed social phobia. (AR 677.)

Dr. Miller again examined Plaintiff at the Commissioner's request in December 2014. (AR 796-99.) Plaintiff affirmed suicidal ideation and past suicide attempts. (AR 797.) She related symptoms that included isolation, hopelessness, inattention to hygiene, and overeating. *Id*. She experienced panic attacks when around others. (AR 798.) Dr. Miller observed that Plaintiff's grooming and hygiene were below average. *Id*. She committed errors when she performed the serial sevens examination. *Id*. Dr. Miller opined that Plaintiff's daily routines did not appear to be well-established and that she required support from others to perform these tasks. (AR 799.) Her daily activities were simple and her ability to sustain daily activities was impaired. *Id*. Her frustration tolerance was below average and she was likely to experience difficulty in social interactions. *Id*. Dr. Miller diagnosed social anxiety disorder and unspecified depressive disorder. *Id*.

The ALJ questioned the VE about the availability of jobs to a hypothetical individual who retained Plaintiff's residual functional capacity (RFC). (AR 74.) The VE testified that, while the individual could not perform Plaintiff's past relevant work (AR 74), she retained the RFC to perform the jobs of telephone solicitor and sorter. (AR 86.) The hypothetical individual possessed

transferable work skills of basic math, oral communication, operation of office equipment, and customer service. (AR 86.) The jobs that the VE identified required a complete and total readjustment in terms of work setting. (AR 88.)

The ALJ made the following findings: Plaintiff met the insured status requirement through September 30, 2016 (AR 13); to be eligible for Disability Insurance Benefits, she needed to establish that she became disabled before this date. She suffered medically determinable severe impairments of degenerative joint disease of the knees, discogenic and degenerative changes in the lumbar spine, degenerative changes in the cervical spine, supraventricular tachycardia, peripheral artery disease, and obesity. *Id.* She suffered medically determinable non-severe impairments that included migraine headaches (AR 13) and anxiety and depression. (AR 15.) Her mental impairments produced mild restrictions in understanding, remembering, or applying information; interacting with others; concentration, persistence, or pace; and adapting or managing herself. (AR 16.) She retained the RFC to perform work at the light exertional level but could stand and walk for two hours in an eight-hour workday and could occasionally climb balance, stoop, kneel, crouch, and crawl. (AR 17.) While her impairments could have reasonably been expected to produce the symptoms that she alleged, any statements that addressed the intensity, persistence, or limiting effects of those symptoms were not entirely consistent with evidence. (AR 19.) The state agency psychological consultants' medical opinions (AR 15) and the state agency medical consultants' 2014 and 2015 medical opinions were consistent with the ALJ's assessment of Plaintiff's RFC (AR 20); Dr. Miller's opinion that Plaintiff retained below average frustration tolerance and would have difficulty in social interactions was unsupported (AR 15); and Dr. Bacchus' opinion that Plaintiff could not kneel or crawl, may demonstrate

difficulty with fine and gross dexterity, and could not perform greater than part-time work merited little weight. (AR 20.) While Plaintiff could not perform any past relevant work (AR 20), she retained the RFC to perform the jobs of phone solicitor and sorter. (AR 22.) She possessed transferable work skills that included basic math, oral communication, operation of office equipment, and customer service. (AR 21.)

In support of remand, Plaintiff first argues that the ALJ erred in weighing medical opinion evidence. Specifically, Plaintiff argues that the ALJ erred in rejecting portions of consultative physician Dr. Bacchus' medical opinion. Upon examining Plaintiff in August 2011, Dr. Bacchus opined that Plaintiff retained the functional capacity to perform light duties on a part-time basis. (AR 585.) Plaintiff could stand for two-to-three hours non-continuously in a four-to-six-hour workday. *Id*. Plaintiff may have experienced difficulty with repetitive squatting, bending, climbing, and fine and gross dexterity on the left. *Id*. While the ALJ credited Dr. Bacchus' opinion that Plaintiff's ability to stand and walk continuously was limited, the ALJ accorded little weight to Dr. Bacchus' opinion that Plaintiff would experience difficulty with fine and gross dexterity on the left and that she could perform no more than part-time work. (AR 20.) In according little weight to these limitations, the ALJ found that Plaintiff did not demonstrate a lack of muscle atrophy or significant deficits in muscle strength, did not regularly rely on an ambulatory device for ambulation and balance, and did not demonstrate consistently reduced grip strength or fine finger manipulative ability. *Id.*

An ALJ must weigh all medical opinion evidence pursuant to the "checklist of factors" that 20 C.F.R. § 404.1527(c) enumerates. *Bauer v. Astrue*, 532 F.3d 606, 608 (7th Cir. 2008). The checklist requires an ALJ "...to consider the length, nature, and extent of the treatment

relationship, frequency of examination, the physician's specialty, the types of tests performed, and the consistency and supportability of the physician's opinion." *Moss v. Astrue*, 555 F.3d 556, 561 (7th Cir. 2009). An ALJ's failure to weigh medical opinion evidence pursuant to the factors that the checklist provides mandates remand. *Gerstner v. Berryhill*, 879 F.3d 257, 263 (7th Cir. 2018). "...(R)ejecting or discounting the opinion of the agency's own examining physician that the claimant is disabled, as happened here, can be expected to cause a reviewing court to take notice and await a good explanation for this unusual step." *Beardsley v. Colvin*, 758 F.3d 834, 839 (7th Cir. 2014). In the present case, the ALJ did not explain if or how she considered the factors that the checklist provided before she rejected Dr. Bacchus' opinion that Plaintiff could sustain part-time work or that she would experience difficulty with fine and gross dexterity on the left. Dr. Bacchus was an examining physician. (AR 583-85.) Generally, an examining physician's medical opinion merits greater weight than a non-examining physician's opinion merits. 20 C.F.R. § 404.1527(c)(1). The ALJ did not explain why she did not begin with the presumption that Dr. Bacchus' opinion merited significant weight, given that the opinion was based on his own physical examination of Plaintiff.

Plaintiff argues that Dr. Bacchus' opinion that Plaintiff would experience difficulty with fine and gross dexterity on the left and that she could sustain only part-time employment was supported by Dr. Bacchus' examination findings as well as objective medical imaging that he ordered. Dr. Bacchus' examination revealed ankle edema; tenderness to palpation over the cervical and lumbosacral spine; antalgic gait, inability to heel or tandem walk; difficulty walking on the toes; positive straight leg raise test; diminished range of motion of the neck, wrists, lower back, knees, and hips; tenderness to palpation over the knees; diminished muscle strength and

tone in the lower extremities; diminished grip strength (measured at 3/5); positive Tinel's sign slow and clumsy fine and gross dexterity on the left. (AR 584.) An x-ray of the cervical spine confirmed narrowing of the C5-C6 and C6-C7 disc spaces with bony changes that were consistent with spondylosis. (AR 590.) The more that evidence supports a physician's opinion, the greater weight that physician's opinion merits. 20 C.F.R. § 404.1527(c)(3). The ALJ did not explain why she did not credit Dr. Bacchus' opinion that Plaintiff could sustain work for no longer than four-to-six hours in a single day based on evidence that reflected ankle edema, tenderness of the cervical and lumbar spine, impaired and antalgic gait, positive straight leg raise test, diminished range of motions of several joints throughout the body, and diminished muscle strength and tone. The ALJ did not explain why it was unreasonable for Dr. Bacchus to conclude that Plaintiff could not sustain full-time employment given evidence of degenerative changes to the cervical spine. The ALJ did not explain why it was unreasonable for Dr. Bacchus to conclude that Plaintiff would experience difficulty with fine and gross dexterity on the left when his examination confirmed that Plaintiff demonstrated reduced grip strength, positive Tinel's sign, and what Dr. Bacchus himself characterized as "slow and somewhat clumsy" fine and gross dexterity on the left. (AR 584.)

The ALJ failed to explain how she considered the consistency between Dr. Bacchus' opinion and other significant evidence of record. Consultative physician Dr. Ringel's September 2012 examination confirmed edema of the lower extremities; diminished grip strength; spasms of the thoracic and lumbar musculature; lumbar, lumbosacral, sacroiliac, and right knee pain; diminished cervical and lumbar range of motion; positive straight leg raise test; inability to walk on the toes or stand on the heels; and inability to squat. (AR 670.) Dr. Bacchus' 2014 examination

revealed findings that were similar to those that he observed in 2011, including edema of the distal extremities; tenderness to palpation of the lumbar spine; reduced range of motion of the lumbar spine; hip tenderness; positive straight leg raise test (AR 792); antalgic gait; inability to perform heel gait on the right; inability to hop; diminished range of motion of the neck, knees, hips, and ankles; tenderness and crepitus in the knees; diminished muscle strength and tone; poor-to-fair sustainability of gait without the use of a cane. (AR 793.) An MRI of the lumbar spine demonstrated annular disc bulge with foraminal narrowing at L2-L3; degenerative annular disc bulge, ligamentous hypertrophy, and foraminal narrowing at L3-L4; marked degenerative annular disc bulge, ligamentous hypertrophy, and broad-based central disc protrusion that produced degenerative canal stenosis at L4-L5; and annular disc bulge and foraminal narrowing at L5-S1 (AR 878) and x-rays of the knees reflected marked medial compartmental joint space narrowing and tricompartmental osteophytes. (AR 666.)

The ALJ did not explain if or how she considered this evidence or how she considered that it was similar to the findings that led Dr. Bacchus to conclude that Plaintiff could not sustain full-time employment or that she would experience difficulty with gross and fine dexterity on the left. Finally, the ALJ failed to explain if or how she considered that Dr. Bacchus was selected specifically by the Commissioner to examine Plaintiff and to opine as to her capacity to perform work tasks. *Garcia v. Colvin*, 741 F.3d 758, 761 (7th Cir. 2013); *Bjornson v. Astrue*, 671 F.3d 640, 647 (7th Cir. 2012). Dr. Bacchus did not possess a treating relationship with Plaintiff and was therefore unlikely to exaggerate the extent of her functional restrictions and to opine that she was disabled out of personal sympathy. *Id*. See 20 C.F.R. § 404.1527(c)(6) (ALJ required to consider any other factors that support according weight to physician's opinion). Furthermore, a

consultative physician such as Dr. Bacchus, whom the Commissioner specifically selects to examine a claimant and to opine as to her ability to perform work tasks, presumably possesses knowledge of the Disability Insurance Benefit program's rules and regulations. *See, e.g., Lipscomb v. Berryhill*, 2017 WL 3580138, *6 (N.D. Ind. 2017); *Kirkwood v. Colvin*, 2017 WL 1416881, *10 (N.D. Ill. 2017).

Plaintiff argues that the ALJ's reasoning for rejecting Dr. Bacchus' opinion was unsound. In finding that Dr. Bacchus' opinion that Plaintiff could perform work on only a part-time basis and that she would experience difficulty with fine and gross dexterity on the left merited only little weight, the ALJ cited certain medical findings that she noted were absent from Plaintiff's treatment records and concluded that the absence of these findings was dispositive when she evaluated Dr. Bacchus' opinion. (AR 20.) An ALJ, however, is not permitted to reach an independent medical conclusion and must rely on the opinions of experts such as Dr. Bacchus. *Lambert v. Berryhill*, 896 F.3d 768, 774 (7th Cir. 2018); *Stage v. Colvin*, 812 F.3d 1121, 1125 (7th Cir. 2016); *Moon v. Colvin*, 763 F.3d 718, 722 (7th Cir. 2014); *Myles v. Astrue*, 582 F.3d 672, 678 (7th Cir. 2009).

Here, the ALJ identified a lack of evidence of muscle atrophy, deficits in muscle strength, reliance on an assistive device to ambulate or to balance, and diminished grip strength as determinative to according little weight to Dr. Bacchus' opinion. (AR 20.) The ALJ, however, cited no medical evidence or authority that established that, for Dr. Bacchus to believe that Plaintiff could not sustain full-time employment or to conclude that Plaintiff would experience difficulty with gross and fine dexterity on the left, Plaintiff's medical records needed to reflect the findings that she identified. Moreover, the ALJ failed to explain if or how she considered that Dr.

Bacchus' own examination findings supported his opinion and that additional examinations, such as those conducted by Dr. Ringel and by Dr. Bacchus again in 2014 were consistent with Dr. Bacchus' opinion. The ALJ was not a physician and did not possess the education, experience, or training to substitute her speculative conclusions as to what findings needed to be necessary for a physician's opinion to be valid for the opinion of a physician who actually examined Plaintiff and predicated his opinion on the very results of that examination. *Lambert*, 896 F.3d at 774; *Stage*, 812 F.3d at 1125; *Moon*, 763 F.3d at 722; Myles, 582 F.3d at 678. The only medical evidence that was available to the ALJ was that which was provided by the non-examining state agency medical consultants who reviewed Plaintiff's medical history and opined as to her functional capacity. (AR 154-55, 180-81.) An ALJ, however, may not rely upon a non-examining physician's medical opinion, by itself, as substantial evidence that supports rejecting an examining physician's medical opinion. *Vanprooyen v. Berryhill*, 864 F.3d 567, 573 (7th Cir. 2017). *Accord Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003).

Plaintiff also argues that the ALJ erred in rejecting consulting psychologist Dr. Miller's opinion. As a result of his 2014 examination of Plaintiff, Dr. Miller opined that Plaintiff demonstrated below average frustration tolerance and that she would have difficulty with social interaction. (AR 799.) Dr. Miller further opined that Plaintiff's daily activities appeared to be simple and that her ability to sustain these activities on a daily basis was impaired. *Id*. The ALJ rejected these opinions, for the ALJ found that, following his 2012 examination of Plaintiff, Dr. Miller opined that Plaintiff's frustration tolerance was average and that she was likely to have good social interaction. (AR 15.) The ALJ found that the record contained no evidence that Plaintiff's frustration tolerance or her ability to interact with others would have changed from

2012 to 2014. *Id*. With regard to Dr. Miller's opinion of Plaintiff's impaired abilities to perform

activities of daily living, the ALJ found that Dr. Miller never opined that Plaintiff was more than

slightly impaired in her ability to perform daily activities. *Id*.

Plaintiff asserts that the ALJ's reasoning is flawed because the ALJ failed to acknowledge

that Dr. Miller's opinion was predicated on his own examination of Plaintiff. 20 C.F.R. §

404.1527(c)(1). Dr. Miller reasonably recognized a deterioration in Plaintiff's mental health

between the two examinations. In 2012, for example, Plaintiff averred that she could attend

doctors' appointments and visit the grocery store but that she was uncomfortable doing so. (AR

675.) In 2014, Plaintiff averred that she could visit the grocery store only in the company of her

husband, mother, daughter, or granddaughter. (AR 798.) In 2012, Dr. Miller noted that Plaintiff

affirmed that she could attend to light housework during the day and that she brushed her teeth

and showered daily. (AR 676.) In 2014, however, Dr. Miller noted that Plaintiff slept during the

day and that she relied on her husband to perform most household chores. (AR 799.)

Additionally, Plaintiff admitted that she showered and brushed her teeth every few days.

*Id*. Dr. Miller observed that Plaintiff's hygiene and grooming were below average. (AR 798.)

Based on his expertise in diagnosing and treating mental illness, Dr. Miller reasonably concluded

that, in 2014, Plaintiff had experienced deterioration and that, at that time, she demonstrated

below average frustration tolerance and would have difficulty with social interaction. Dr. Miller

was the trained medical professional and the ALJ was not permitted to reach a contrary

conclusion based on her lay interpretation of Dr. Miller's examination of Plaintiff. *Lambert*, 896

F.3d at 774; *Stage*, 812 F.3d at 1125; *Moon*, 763 F.3d at 722; *Myles*, 582 F.3d at 678.

Also, in 2012, Dr. Miller opined that Plaintiff experienced only slight impairment in

performing daily activities (AR 677), in 2014, he did not opine as to the degree of impairment that Plaintiff encountered when she attempted to perform daily activities. (AR 799.) The ALJ's conclusion that Dr. Miller only opined that Plaintiff's impairment in this area was slight was a mischaracterization of Dr. Miller's opinions. Mischaracterization of the record compromises an ALJ's decision. *Golembiewski v. Barnhart*, 322 F.3d 912, 916 (7th Cir. 2003). If Dr. Miller, in 2014, believed that Plaintiff suffered a moderate degree of impairment when she attempted to perform activities of daily living, the ALJ should have reconsidered her finding that Plaintiff could have performed work tasks on a full-time basis, for Plaintiff had much more significant flexibility in her ability to perform activities of daily living than she would have had in her ability to perform work tasks. *See Bjornson v. Astrue*, 671 F.3d 640, 647 (7th Cir. 2012) (explaining "critical" differences between activities of daily living and work tasks).

Plaintiff next argues that the ALJ erred in according significant weight to the state agency psychological consultants' medical opinions. (AR 15.) The ALJ found that, while Plaintiff suffered from medically determinable severe impairments, the non-examining state agency psychological consultants consistently found that these impairments were not severe. *Id*. The ALJ, however, failed to acknowledge or did not notice, that these medical opinions were internally inconsistent. The state agency psychological consultants who evaluated Plaintiff's mental health history in 2012 (AR 107), 2014 (AR 152), and 2015 (AR 178) each opined that Plaintiff suffered from anxiety disorder and affective disorder and that these impairments were severe. The state agency psychological consultants proceeded to opine that these impairments produced mild restrictions in activities of daily living; social functioning; and concentration, persistence, or pace. *Id*. These psychologists then concluded, in direct contradiction to their

18

previous finding, that Plaintiff's mental impairments were, in fact, not severe. *Id*. A medically determinable severe mental impairment, by definition, produces significant limitations in a claimant's mental ability to perform work tasks. 20 C.F.R. § 404.1520(c). Furthermore, the state agency psychological consultants did not explain why they identified Plaintiff's affective disorder and anxiety disorder as medically determinable severe impairments, but, in their very same opinions, found the impairments to be non-severe. These findings were directly in conflict and the ALJ was responsible for resolving conflicts in the evidence. *Terry v. Astrue*, 580 F.3d 471, 476 (7th Cir. 2009).

The ALJ did not discuss the conflict in these opinions and made no attempt to resolve the state agency psychological consultants' incongruous conclusions that Plaintiff's mental impairments were simultaneously severe and non-severe. The ALJ ignored the conflict and relied only on the portions of the opinions that concluded that Plaintiff's mental impairments were not severe. An ALJ, however, may not selectively cite from the record and must explain how she considers evidence that favors a claimant. *Meuser v. Colvin*, 838 F.3d 905, 912 (7th Cir. 2016). The ALJ further attempted to downplay evidence that suggested that Plaintiff's mental impairments were more significantly disabling than the state agency psychological consultants found them to be. The ALJ, for example, did not explain why Plaintiff's testimony that she prayed for death every night (AR 47) did not support a finding that Plaintiff's mental impairments produced work-related functional restrictions that should have been incorporated into the ALJ's assessment of Plaintiff's RFC. *See* SSR 96-8p (ALJ must include all work-related functional restrictions in claimant's RFC including those that are produced by impairments that are not, by themselves, severe); *Stage*, 812 F.3d at 1125 (citation omitted).

The ALJ did not explain how Plaintiff's physicians' observations that Plaintiff presented shaking, gritting her teeth, and with racing heart (AR 720) did not reflect that Plaintiff's anxiety may have interfered with her ability to relate to others or to perform tasks with the persistence or pace that competitive work demanded. As discussed above, the ALJ largely dismissed, based on nothing more than her own lay medical intuition, Dr. Miller's findings that suggested that Plaintiff had experienced deterioration in her mental functional capacity in the two years between his examination. The ALJ failed to explain why the deterioration that Dr. Miller observed would not have been reflected in a diminution of the complexity of tasks that Plaintiff could perform or the length of a workday that she could tolerate.

The ALJ's error was not harmless, for the ALJ found that Plaintiff retained transferable work skills and could perform skilled work at the light exertional level. (AR 21.) The ALJ then found, based on the VE's testimony, that Plaintiff could perform the jobs of phone solicitor and sorter. (AR 22.) Plaintiff contends that, had the ALJ rejected the confusing and contradictory opinions that the state agency medical consultants found, and determined that Plaintiff's mental impairments were, in fact, severe and precluded her from performing skilled work, 20 C.F.R. Part 404, Subpart P, Appendix 2 § 202.02 would have mandated the ALJ to find Plaintiff disabled as of her 55th birthday. Pursuant to 20 C.F.R. Part 404, Subpart P, Appendix 2, § 202.02, an individual who is of advanced age (age 55), who possesses a limited education, who does not possess transferable work skills, and who is limited to work that is performed at the light exertional level is to be found to be disabled. Plaintiff attained age 55 on September 16, 2015. Plaintiff possessed a limited education, for she attended school through the eighth grade and did not obtain a General Educational Development (GED). (AR 674.) Thus Plaintiff concludes that

had the ALJ determined that Plaintiff was restricted to unskilled work and that any work skills were non-transferable, 20 C.F.R. Part 404, Subpart P, Appendix 2 § 202.02 would have required the ALJ to find Plaintiff to be disabled as of September 16, 2015.

In response, the Commissioner argues that the ALJ committed no error in rejecting consultative examining physician Dr. Bacchus' and consultative examining psychologist Dr. Miller's medical opinions. With regard to Dr. Bacchus' medical opinion, the Commissioner contends that Plaintiff misstated Dr. Bacchus' 2011 assessment of Plaintiff's functional capacity. The Commissioner further asserts that the ALJ recognized that the non-examining state agency medical consultants reviewed available medical evidence and reached conclusions that were different than Dr. Bacchus' medical opinion. The Commissioner contends that the ALJ recognized that Dr. Bacchus' opinion, that Plaintiff suffered limitations performing fine and gross dexterity with the left upper extremity, was contradicted by evidence that reflected that Plaintiff's grip strength was not impaired.

An ALJ is required to weigh all medical opinion evidence pursuant to the "checklist of factors" that 20 C.F.R. § 404.1527(c) enumerates. *Bauer v. Astrue*, 532 F.3d 606, 608 (7th Cir. 2008). The checklist instructs an ALJ "...to consider the length, nature, and extent of the treatment relationship, frequency of examination, the physician's specialty, the types of tests performed, and the consistency and supportability of the physician's opinion." *Moss v. Astrue*, 555 F.3d 556, 561 (7th Cir. 2009). An ALJ's failure to explain how she weighed medical opinion evidence by employing the factors mandates remand. *Gerstner v. Berryhill*, 879 F.3d 257, 263 (7th Cir. 2018). "[R]ejecting or discounting the opinion of the agency's own examining physician that the claimant is disabled, as happened here, can be expected to cause a reviewing court to take

notice and await a good explanation for this unusual step." *Beardsley v. Colvin*, 758 F.3d 834, 839 (7th Cir. 2014).

While the Commissioner contends that the ALJ did, in fact, weigh Dr. Bacchus' medical opinion pursuant to the mandatory regulatory factors, the Commissioner cites no actual evidence that suggested that the ALJ employed the regulatory factors. The ALJ did not explain how she considered that Dr. Bacchus predicated his opinion after he physically examined her. (AR 583-85.) Generally, an examining physician's medical opinion merits greater weight than a non-examining physician's medical opinion merits. 20 C.F.R. § 404.1527(c)(1). The ALJ did not explain why Dr. Bacchus' role as an examining medical source did not, as the regulations instruct, persuade the ALJ to accord greater, rather than less, weight to Dr. Bacchus' medical opinion. Dr. Bacchus' August 2011 examination of Plaintiff revealed ankle edema; tenderness to palpation over the cervical and lumbosacral spine and the knees; antalgic gait; difficulty walking on the toes; inability to heel or tandem walk or to hop; inability to completely squat; diminished range of motion of the neck, wrists, lower back, hips, and knees; positive straight leg raise test; diminished muscle strength and tone in the left lower extremity; and diminished grip strength that was more noticeable on the left than on the right. (AR 584.) Dr. Bacchus observed that Plaintiff moved slowly and demonstrated difficulty getting onto and off of the examination table. *Id.* The more evidence that supports a physician's medical opinion, the greater weight that medical opinion merits. 20 C.F.R. § 404.1527(c)(3). Neither the ALJ nor the Commissioner discuss Dr. Bacchus' examination findings or explain why these findings did not support Dr. Bacchus' opinion that Plaintiff could stand and walk for two-to-three hours in a four-to-six hour workday.

Neither the ALJ nor the Commissioner explain why Dr. Bacchus' opinion should not have

merited greater, rather than less, weight where his own examination revealed that Plaintiff demonstrated limited range of motion, diffuse tenderness to palpation, difficulty ambulating and performing postural activities, and diminished grip strength. Neither the Commissioner nor the ALJ address evidence that was consistent with Dr. Bacchus' examination findings and his subsequent opinion of Plaintiff's physical functional capacity. Consultative physician Dr. Ringel examined Plaintiff in September 2012 (AR 668-72) and observed that Plaintiff demonstrated difficulty standing from a chair and getting on and off of the examination table. (AR 669.) His examination further revealed edema of the lower extremities, diminished grip strength, thoracic and lumbar muscle spasms, positive straight leg raise test, diminished cervical and lumbar range of motion, diminished hip range of motion, inability to walk on the toes or stand on the heels, inability to squat, and tenderness in the right knee. (AR 670.)

Dr. Bacchus again examined Plaintiff at the Commissioner's request in December 2014. (AR 791-94.) His second examination confirmed difficulty getting on and off of the examination table with the use of a cane; pitting edema of the distal extremities; tenderness to palpation and diminished range of motion of the lumbosacral spine; tenderness to palpation of the hips; positive straight leg raise test (AR 792); antalgic gait that favored the right lower extremity; ambulation aided with a cane; inability to perform heel gait on the right, hop, or completely squat; diminished range of motion of the neck, lower back, hips, knees, and ankles; tenderness and crepitus in the knees; diminished muscle strength and tone in the right lower extremity; and fair-to-poor sustainability of gait without the use of the cane. (AR 793.) Medical imaging reflected narrowing of the C5-C6 and C6-C7 disc spaces with bony changes that were consistent with spondylosis (AR 590) as well as annular disc bulge with foraminal narrowing at

23

L2-L3; degenerative annular disc bulge, ligamentous hypertrophy, and foraminal narrowing at L3-L4; marked degenerative annular disc bulge, ligamentous hypertrophy, and broad-based central disc protrusion that produced degenerative canal stenosis at L4-L5; and annular disc bulge and foraminal narrowing at L5-S1. (AR 878.) In addition, x-rays of the knees demonstrated marked medial compartmental joint space narrowing and tricompartmental osteophytes. (AR 666.)

The more consistent that a medical opinion is with other evidence of record, the greater weight that opinion merits. 20 C.F.R. § 404.1527(c)(4). Neither the ALJ nor the Commissioner explain how they considered this evidence or why, where additional examinations revealed findings that were consistent with Dr. Bacchus' original examination and medical opinion and where medical imaging confirmed that Plaintiff suffered impairments of the cervical and lumbar spine as well as the knees, Dr. Bacchus' original opinion should not have merited greater, rather than less, weight. Finally, the Commissioner and the ALJ ignore that Dr. Bacchus was specifically selected by the Commissioner to examine Plaintiff and to provide an opinion of her functional capacity. Plaintiff was not Dr. Bacchus' patient and, therefore, Dr. Bacchus was not likely to exaggerate the extent of Ms. Bacchus' limitations or to provide an overly sympathetic assessment of her inability to perform work tasks. *Garcia v. Colvin*, 741 F.3d 758, 761 (7th Cir. 2013); *Bjornson v. Astrue*, 671 F.3d 640, 647 (7th Cir. 2012). The ALJ was required to consider any other factors that support or contradict a physician's medical opinion.

The Commissioner ignores Plaintiff's argument that the ALJ failed to explain how she considered numerous regulatory factors that, had she properly considered them as she was mandated to do, would have resulted in her according Dr. Bacchus' opinion greater, rather than,

less, evidentiary weight. The Commissioner contends that Plaintiff mischaracterized Dr. Bacchus' opinion and that his statement that Plaintiff could perform "...light duties, at least part-time in nature, standing two-to-three hours in a four-to-six hour day, noncontinuous (sic)" was not an endorsement that Plaintiff could not sustain full-time employment. The Commissioner maintains that an RFC assessment is a determination of the most that Plaintiff could do and not the least. *Id.* However, as Plaintiff points out, the Commissioner reads an assertion in Dr. Bacchus' opinion that was not present. Dr. Bacchus did not imply that Plaintiff could perform work over the course of an eight-hour day. (AR 586.) He opined that she could perform work in a workday that was six hours in length. *Id.* The Commissioner merely speculates that Dr. Bacchus' use of the qualifying phrase "at least" suggested that Dr. Bacchus believed that Plaintiff could sustain greater activity than he propounded. Yet, the Commissioner fails to explain why, if Dr. Bacchus believed that Plaintiff could sustain work on a full-time basis he did not so opine and why he only offered an opinion of the least effort that she could sustain. The Commissioner further contends that the ALJ relied on the state agency medical consultants' medical opinions which stated that Plaintiff could perform work at the light exertional level. An ALJ, however, may not rely on a nonexamining medical source's medical opinion, by itself, as substantial evidence to support rejecting an examining physician's medical opinion. *Vanprooyen v. Berryhill*, 864 F.3d 567, 573 (7th Cir. 2017); *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003).

The state agency medical consultants predicated their opinion solely on a review of evidence that other examining physicians provided. The ALJ was not permitted to rely on their contrary opinions to reject Dr. Bacchus' opinion that resulted from his examination of Plaintiff. *Id*. The Commissioner focuses on a lack of evidence that corroborated Dr. Bacchus' opinion that

Plaintiff would experience difficulty with fine and gross dexterity. Medical source statements, such as the statement that Dr. Bacchus provided contain opinions that address different areas of a claimant's functional capacity and an ALJ must decide whether or not to adopt each opinion. SSR 96-5p. The Commissioner, like the ALJ, fails to explain why Dr. Bacchus' opinion of Plaintiff's use of the hands had any bearing on Dr. Bacchus' opinion of Plaintiff's ability to stand and to walk or to lift and to carry. *Spicher v. Berryhill*, 898 F.3d 754, 757 (7th Cir. 2018) (ALJ must construct logical and accurate bridge from evidence to conclusion). The Commissioner fails to respond to Plaintiff's argument that the ALJ lacked the requisite medical knowledge or training to find that, for certain functional limitations to be valid, Plaintiff needed to demonstrate particular medical signs and findings. Plaintiff proposes that the Commissioner's silence suggests that she has no appropriate response. *See, e.g., Herrmann v. Berryhill*, 2017 WL 6523931, *11 (N.D. Ind. 2017) (Plaintiff's arguments that Commissioner fails to address are unrefuted).

The Commissioner contends that the ALJ committed no error in rejecting consultative examining psychologist Dr. Miller's December 2012 opinion that Plaintiff's frustration tolerance was below average and she would experience difficulty with social interaction. The Commissioner contends that the ALJ reasonably considered that Plaintiff's mental status examinations remained unchanged from a previous examination that Dr. Miller conducted in September 2012 examination. The Commissioner, like the ALJ ignores, that, during the examination, Plaintiff related changes that had occurred over the previous two years that could have reasonably altered Dr. Miller's opinion. As discussed above, in 2012, Plaintiff could attend doctor's appointments as well as shop for groceries independently, but by December 2014, she only left the house when she was accompanied by family members. In 2012, Plaintiff could

perform light housework and that she brushed her teeth and bathed daily, but by December 2014, she slept during the day and showered and brushed her teeth every few days. *Id.* In December 2014, Dr. Miller observe that Plaintiff's grooming and hygiene were poor. *Id.* As psychiatric assessments are based on what a patient tells a psychiatrist or psychologist, Dr. Miller reasonably concluded that, given the decline in Plaintiff's ability to go out unaccompanied, to perform tasks, and to attend to personal hygiene, she was more limited in December 2014 than she had been in September 2012. *Price v. Colvin*, 794 F.3d 836, 840 (7th Cir. 2015). The ALJ did not discuss that Plaintiff related that her ability to function in social situations, to perform basic activities of daily living, and to maintain personal hygiene had declined in the two year period between psychological evaluations. The ALJ was not permitted to ignore this evidence and was required to predicate her decision on all pertinent evidence, including evidence that favored Plaintiff. *Plessinger v. Berryhill*, 900 F.3d 909, 915 (7th Cir. 2018).

The Commissioner asserts that the ALJ committed no error in according significant weight to the state agency psychological consultants' medical opinions. The Commissioner maintains that, despite the facial inconsistencies and contradictions of these opinions, the ALJ reasonably resolved the conflict that was created when the state agency psychological consultants opined that Plaintiff suffered from severe mental impairments but that these impairments produced only mild restrictions in activities of daily living; social functioning; and concentration, persistence, or pace. *Id.* The Commissioner contends that "(t)he ALJ's narrative analysis discussing the relevant evidence sufficiently resolves Plaintiff's assertion of internal inconsistencies." The Commissioner further contends that, even if the state agency psychological consultants' medical opinions were excluded from the record, the Court could identify substantial

evidence that supported the ALJ's conclusion that Plaintiff's mental impairments were not severe. *Id*.

The ALJ retained a duty to resolve conflicts in the evidence. *Terry v. Astrue*, 580 F.3d 471, 476 (7th Cir. 2009). The Commissioner fails to identify anything in the ALJ's "narrative analysis" that suggests that she affirmatively resolved the conflicts in the state agency psychological consultants' medical opinions. The ALJ never acknowledged that there existed a direct conflict between the state agency medical consultants' opinions that Plaintiff's mental impairments were simultaneously severe but produced only mild functional restrictions. While the ALJ discussed evidence that related to Plaintiff's mental impairments (AR 15-16), the ALJ did so through the lens of a layperson. The ALJ possessed no medical training in the evaluation of psychiatric disorders and was not permitted to determine the significance of the presence, or absence, of medical signs and symptoms based on nothing more than her lay medical speculation. *Stage v. Colvin*, 812 F.3d 1121, 1125 (7th Cir. 2016). "ALJs must rely on expert opinions instead of determining the significance of particular medical findings themselves." *Lambert v. Berryhill*, 896 F.3d 768, 774 (7th Cir. 2018).

The Commissioner fails to explain how the ALJ's lay analysis of Plaintiff's psychological history resolved the conflict that the state agency psychological consultants created when they crafted their opinions. Finally, the Commissioner's conclusion that the Court could find evidence that supports the ALJ's assessment of Plaintiff's mental impairments absent the state agency psychological consultants' medical opinions contravenes Seventh Circuit case law, for the ALJ would have no medical opinion evidence to guide her evaluation of the severity of Plaintiff's mental impairments. *Id.; Suide v. Astrue*, 371 F. App'x 684, 690 (7th Cir. 2010) (ALJ faces

"evidentiary deficit" where she rejects all available medical opinion evidence).

This court agrees with Plaintiff that the ALJ erred in several areas in weighing medical opinion evidence. Thus remand is required.

Next, Plaintiff argues that the ALJ erred in finding that Plaintiff possessed transferable work skills. The VE testified that Plaintiff's past relevant work consisted of that of a sales clerk. (AR 86.) When questioned by the ALJ, the VE testified that a hypothetical individual would have acquired the work skills of basic math, oral communication, operation of equipment, and customer service. *Id*. The ALJ found that Plaintiff did, in fact, acquire these work skills. (AR 21.) The VE testified that an individual who had acquired such work skills could perform the jobs of telephone solicitor and sorter. (AR 86.) The ALJ found that Plaintiff could perform these jobs. (AR 22.) Plaintiff argues that the ALJ erred because for she found that Plaintiff acquired work traits or aptitudes and not specific work skills.

SSR 82-41 defines a work skill as "…knowledge of a work activity which requires the exercise of significant judgment that goes beyond the carrying out of simple job duties and is acquired through performance of an occupation which is above the unskilled level (requires more than 30 days to learn). It is practical and familiar knowledge of the principles and processes of an art, science or trade, combined with the ability to apply them in practice in a proper and approved manner." Specific work skills include "… making precise measurements, reading blueprints, and setting up and operating complex machinery." *Id*. The Social Security Administration's Programs Operations Manual System (POMS) DI 25015.017 Transferability of Skills Assessment (TSA) further elaborates on what constitutes a work skill and what work tasks are considered unskilled. For example, a claimant who answered a multiline telephone, assembled equipment or complex

objects, or who handled large amounts of money or kept a money drawer balanced using computers acquired work skills. *Id.* A claimant who answered a standard telephone, greeted customers, filed papers, or performed routine money handling tasks performed unskilled tasks and therefore, by definition, did not acquire work skills. *Id*.

Plaintiff argues that the "skills" that the ALJ found Plaintiff had acquired through her past relevant work as a sales clerk, bore greater similarity to the unskilled tasks that the TSA described than to the work skills that the TSA identified. Plaintiff testified that, when she worked as a sales clerk at Goodwill, she kept records of the day's receipts using a simple worksheet. (AR 81.) She deposited money when it totaled over $200. *Id*. She transported merchandise in a shopping cart. (AR 82.) She testified that she did not prepare work schedules, coordinate sales promotions (AR 81), independently determine where material would be placed for sale within the store, order supplies or merchandise (AR 82), discipline employees, or prepare sales reports. (AR 83.) The skills that Plaintiff purportedly acquired from the job of sales clerk more closely resembled the unskilled task that the TSA describes. While Plaintiff counted money at the end of the day, the amount was not significant and she did so by hand and with the use of worksheet and not a computer. Plaintiff did not make any decisions that affected the supply of merchandise that the store sold. While Plaintiff may have interacted with customers, neither the VE nor the ALJ cited evidence that Plaintiff's responsibilities were any greater than to welcome the customers to the store and to accept payment for merchandise that the customers selected themselves. Plaintiff was not charged with disciplining employees or drafting employees' schedules; these tasks were performed by the store manager. (AR 83.) The only office equipment that Plaintiff "operated" included a cash drawer and a shopping cart. The skills that Plaintiff purportedly acquired were

dissimilar to the work skills that SSR 82-41 and POMS described.

While the ALJ accepted the VE's testimony that performing basic math and oral communication somehow constituted work skills that could then transfer to other occupations, an ALJ may rely on a VE's testimony only where that testimony is reliable. *Britton v. Astrue*, 521 F.3d 799, 803 (7th Cir. 2008). Where a VE's testimony is flawed, it is unreliable and cannot constitute evidence that satisfies the ALJ's burden at step five of the adjudication process to demonstrate that there exists a substantial number of jobs in the national economy that a claimant can perform. *Overman v. Astrue*, 546 F.3d 456, 464 (7th Cir. 2008). Here, the VE's testimony was flawed, for she impermissibly conflated unskilled work tasks with skilled work tasks that the job of sales clerk required. The ALJ's error in relying on the VE's testimony was not harmless, for, had the ALJ found that Plaintiff had actually acquired no work skills and that she could, therefore, perform only unskilled work, 20 C.F.R. Part 404, Subpart P, Appendix 1 § 202.01 would have directed the ALJ to find that Plaintiff was disabled as of her 55th birthday. 20 C.F.R. Part 404, Subpart P, Appendix 1 § 202.01 directs an ALJ to find a claimant to be disabled where that claimant is of advanced age (age 55), possesses a limited education, performed unskilled work, and is limited to work at the light exertional level. Plaintiff attained age 55 on September 16, 2015. She possessed an eighth-grade education, and had the ALJ restricted her to unskilled work that was performed at the light exertional level, 20 C.F.R. Part 404, Subpart P, Appendix 1 § 202.01 would have required the ALJ to find that Plaintiff was disabled as of her 55th birthday.

In response, the Commissioner asserts that the ALJ committed no error in finding that Plaintiff possessed transferable work skills. The Commissioner maintains that the ALJ, relying on the VE's testimony, found that, based on her past work at Goodwill, Plaintiff retained the

transferable work skills of basic math, oral communication, operation of basic office equipment, and customer service.  The Commissioner further contends that the ALJ, again relying on the VE's testimony, concluded that these skills transferred to the jobs of telephone solicitor and sorter. The Commissioner maintains that the VE correctly identified the duties of the job of sorter and found that the skills that the job required were those that Plaintiff acquired while working at Goodwill. The Commissioner's argument, however, ignores that the ALJ predicated her decision on unreliable VE testimony, for the transferable skills that he testified that Plaintiff retained were not actual work skills but were work traits or aptitudes.

A work skill is defined as "…knowledge of a work activity which requires the exercise of significant judgment that goes beyond the carrying out of simple job duties and is acquired through performance of an occupation which is above the unskilled level (requires more than 30 days to learn). It is practical and familiar knowledge of the principles and processes of an art, science or trade, combined with the ability to apply them in practice in a proper and approved manner." SSR 82-41. Specific work skills include "… making precise measurements, reading blueprints, and setting up and operating complex machinery." *Id*. The Social Security Administration's Programs Operations Manual System (POMS) DI 25015.017 Transferability of Skills Assessment (TSA) provides further guidance on how to distinguish a work skill from a work trait or aptitude. The TSA explains that a claimant acquires work skills where that claimant answered a multiline telephone, assembled complex objects or equipment, or handled large amounts of money or kept a money drawer balanced using a computer. *Id*. Answering a standard telephone, greeting customers, filing papers, or performing routine money handling transactions do not provide work skills. *Id.* Plaintiff did not perform any tasks that would have allowed her to

acquire work skills. Plaintiff testified that, at Goodwill, she tracked money using a simple worksheet, she deposited money when it totaled over $200, and she transported materials in a shopping cart. (AR 81-82.) She did not prepare employee work schedules, coordinate sales promotions, determine where material was placed in the store, order supplies or merchandise, prepare sales reports, or discipline employees. (AR 81-83.) Plaintiff, at most acquired workplace aptitudes or traits. The tasks that she performed were similar to those that the TSA described as unskilled tasks. Plaintiff did not manage money using a computer, she did not exercise any managerial discretion, and she did not operate equipment that was more sophisticated than a shopping cart.

The VE erred in identifying the unskilled tasks that Plaintiff performed as imbuing her with transferable work skills. The VE's testimony, therefore, was unreliable, and the ALJ was not permitted to cite flawed testimony as substantial evidence that supported her decision. *Britton v. Astrue*, 521 F.3d 799, 803 (7th Cir. 2008). An ALJ may not rely on flawed or erroneous VE testimony as substantial evidence to support a finding that a substantial number of jobs exist in the national economy that a claimant can perform. *Overman v. Astrue*, 546 F.3d 456, 464 (7th Cir. 2008) The ALJ's conclusion that Plaintiff was not disabled was predicated on an improper and erroneous conclusion that there existed work in the national economy that she could perform based on transferable skills that she acquired from past work. The Commissioner quibbles with Plaintiff's reliance on *Britton* and *Overman*, for the Commissioner maintains that the holdings of those cases are inapplicable in the present matter simply because the facts of the matter at bar differ from those in *Britton* and *Overman*. The Commissioner asks the Court to apply an unnecessarily narrow reading to these decisions. Nowhere in *Britton* or *Overman* did the Seventh

33

Circuit hold that a Court can find that an ALJ erred by relying on flawed VE testimony only where the circumstances of the case before the Court perfectly match those that the Seventh Circuit faced in *Britton* and *Overman*.

This court finds that the ALJ erred in her analysis of whether Plaintiff possessed transferable work skills. Thus, remand is appropriate on this basis also.

Next, Plaintiff argues that the ALJ erred in finding that Plaintiff's subjective allegations were not entirely consistent with evidence. In assessing Plaintiff's subjective allegations that addressed the intensity, persistence, and limiting effects of her pain and symptoms, the ALJ found that "...the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record..." (AR 682.) The Seventh Circuit has admonished ALJs use of similar phraseology ("not entirely credible"), dismissing it as "meaningless boilerplate." *Parker v. Astrue*, 597 F.3d 920, 922 (7th Cir. 2010); *Martinez v. Astrue*, 630 F.3d 693, 696 (7th Cir. 2011); *Spiva v. Astrue*, 628 F.3d 346, 348 (7th Cir. 2010). An ALJ must supply sufficient detail in her analysis that permits the Court to conduct meaningful judicial review and to trace the path of the ALJ's reasoning. *Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002).

In the present case, the ALJ did not identify which of Plaintiff's subjective allegations she found to have been consistent with evidence, which allegation she found to have been inconsistent with evidence, or how consistent with evidence she found any particular allegation to have been. The ALJ, for example, failed to explain if she found Plaintiff's allegation that every night she prayed to die (AR 47) to be consistent with evidence, inconsistent with evidence, or

how particularly consistent with evidence she found this allegation to have been. The ALJ did not explain if she found Plaintiff's allegation that, when she suffered an exacerbation of sciatica she could not even attend to self-care (AR 48) to be consistent with evidence, inconsistent with evidence, or how consistent she found this particular allegation to have been. Furthermore, the ALJ erred in applying an incorrect evidentiary standard with regard to her evaluation of Plaintiff's subjective allegations. In finding that Plaintiff's allegations were not entirely consistent with evidence, the ALJ presumed that, for the ALJ to credit any of Plaintiff's subjective allegations, her statements needed to be entirely consistent with evidence. This contradicts the Commissioner's own regulations as well as Seventh Circuit case law which require that an ALJ apply the preponderance of the evidence standard. 20 C.F.R. § 404.953(a). *Accord Jones ex rel. Jones v. Chater*, 101 F.3d 509, 512 (7th Cir. 1996) (citation omitted). *See also, e.g., Minger v. Berryhill*, 307 F. Supp.3d 865, 872 (N.D. Ill. 2018). The preponderance of the evidence standard requires an ALJ to accept a fact where relevant evidence as a whole "...shows that the existence of the fact to be proven is more likely than not." 20 C.F.R. § 404.901.

The ALJ erred in failing to explain how she considered Plaintiff's activities of daily living when she assessed Plaintiff's subjective allegations. The ALJ observed that Plaintiff maintained her marriage, remained in contact with family, read for pleasure, fed her cat, prepared simple meals, loaded the washing machine, paid bills, talked and texted on a telephone, folded clothing, shopped for groceries, cared for her personal needs, and performed household chores in ten-minute increments. (AR 19.) The ALJ characterized these activities as "at least a somewhat full range of activities", and while the ALJ did not explain how these activities contradicted Plaintiff's subjective allegations, the ALJ apparently relied on the activities to discredit Plaintiff's

testimony and statements.

An ALJ is required to consider a claimant's activities of daily living when she evaluates a claimant's subjective allegations. SSR 16-3p. If an ALJ finds that a claimant's activities of daily living contradict a claimant's subjective allegations, an ALJ must explain how a claimant's particular activity of daily living contradicts a claimant's particular subjective allegation. *Zurawski v. Halter*, 245 F.3d 881, 887 (7th Cir. 2001). "The critical differences between activities of daily living and activities in a full-time job are that a person has more flexibility in scheduling the former than the latter, can get help from other persons…and is not held to a minimum standard of performance, as she would be by an employer. The failure to recognize these differences is a recurrent, and deplorable, feature of opinions by administrative law judges in social security disability cases." *Bjornson v. Astrue*, 671 F.3d 640, 647 (7th Cir. 2012).

An ALJ's mere recitation of evidence does not substitute for meaningful analysis of evidence. *Young v. Sec'y of Health and Human Servs.*, 957 F.2d 386, 393 (7th Cir. 1992). In the present case, while the ALJ identified activities of daily living that Plaintiff could perform, the ALJ failed to explain how any particular activity was inconsistent with Plaintiff's subjective allegations. The ALJ, for example, failed to explain how Plaintiff's occasional ability to feed her cat contradicted any of her allegations of extreme pain. The ALJ failed to explain how talking on a telephone or maintaining contact with her mother undermined Plaintiff's alleged inability to work 40 hours each week. The ALJ failed to explain if or how she considered that Plaintiff could have performed activities of daily living when her pain and symptoms were least severe and that she could take as many breaks as she needed when she performed these tasks. The ALJ acknowledged that Plaintiff performed household chores in ten-minute increments. Employers

would not have permitted Plaintiff to perform work tasks only at times when Plaintiff's pain was least severe and would not have allowed Plaintiff to take frequent breaks or to break up tasks into short periods that accommodated her pain. The ALJ failed to explain how Plaintiff's ability to perform activities of daily living supported a conclusion that Plaintiff could have performed work tasks five days each week for eight hours each day. *Carradine v. Barnhart*, 360 F.3d 751, 755 (7th Cir. 2004) (ALJ must determine if claimant could perform work tasks on full-time basis and not if claimant could sporadically perform activities of daily living).

Similarly, the ALJ erred in failing to explain why the treatment that Plaintiff pursued did not further bolster Plaintiff's subjective allegations. The ALJ recited that Plaintiff received treatment from specialists for tachycardia; received multiple steroid injections; applied a transcutaneous electric stimulation (TENS) unit; and used medications that included Norco, methadone, Vicoprofen, and Prednisone. (AR 19.) The ALJ failed to explain why Plaintiff's willingness to undergo such treatment did not render her subjective allegations of pain and symptoms more, rather than less, consistent with evidence. An ALJ is required to consider treatment that a claimant receives for her impairments, including medication and treatment other than medication. SSR 16-3p. The Seventh Circuit has held "…a claimant's election to undergo serious treatment, such as having surgery and taking 'heavy doses of strong drugs,' indicates that the claimant's complaints of pain are likely credible. are likely credible." *Scrogham v. Colvin*, 765 F.3d 685, 701 (7th Cir. 2014) (quoting *Carradine*, 360 F.3d at 755). Here, the ALJ did not explain why Plaintiff's use of narcotic pain medications, treatment with specialists, and use of a TENS device did not further support her allegations of disabling pain and symptoms. In discussing Plaintiff's treatment, the ALJ noted only that Plaintiff did not undergo surgery on her

spine, knees, or legs and that she did not regularly treat with specialists. (AR 19.)

An ALJ is required to consider a claimant's non-compliance with treatment as well as her failure to aggressively pursue treatment when she evaluates a claimant's subjective allegations. SSR 16-3p. An ALJ, however, may not draw a negative inference regarding a claimant's subjective allegations without first obtaining from the claimant any explanation that she may have for her treatment decisions. *Id*; *Craft v. Astrue*, 539 F.3d 668, 679 (7th Cir. 2008). Here, the ALJ acknowledged that Plaintiff did not always possess medical insurance. (AR 19.) A claimant's inability to afford treatment may excuse a claimant's failure to regularly seek treatment or follow-through with treatment. *Jelinek v. Astrue*, 662 F.3d 805, 814 (7th Cir. 2011). In the present case, the ALJ failed to explain why it was unreasonable to find that inability to afford treatment and a lack of medical insurance did not account for Plaintiff's failure to more diligently treat with specialists. *Spicher v. Berryhill*, 898 F.3d 754, 757 (7th Cir. 2018) (ALJ must construct logical and accurate bridge from evidence to conclusion). Furthermore, the ALJ failed to explain how she considered Plaintiff's testimony that her physicians advised her that they wanted to wait to perform knee replacement surgery due to Plaintiff's age (AR 41) and that she was quitting smoking in order to undergo spinal fusion surgery. (AR 44.) The ALJ was required to consider Plaintiff's explanations and was not permitted only to consider evidence that supported her determination that Plaintiff was not disabled. *Plessinger v. Berryhill*, 900 F.3d 909, 915 (7th Cir. 2018). Furthermore, the ALJ's conclusion that Plaintiff should have undergone surgical procedures where doctors advised against it at the time that such procedures were discussed amounts to the ALJ's improper substitution of her lay opinion for that of medical professionals. *Myles v. Astrue*, 582 F.3d 672, 678 (7th Cir. 2009).

In response, the Commissioner argues that the ALJ committed no error in evaluating Plaintiff's allegations that addressed the intensity, persistence, and limiting effects of Plaintiff's pain and symptoms. The Commissioner contends that the Court should uphold the ALJ's assessment of Plaintiff's subjective allegations because that assessment was not patently wrong. As the Seventh Circuit has held, a Court "…will overturn an ALJ's decision to discredit a claimant's alleged symptoms only if the decision is 'patently wrong,' meaning it lacks explanation or support. *Murphy v. Colvin*, 759 F.3d 811, 816 (7th Cir. 2014). A credibility determination lacks support when it relies on inferences that are not logically based on specific findings and evidence. *Id*." *Cullinan v. Berryhill*, 878 F.3d 598, 603 (7th Cir. 2017).

Here, the ALJ's assessment of Plaintiff's subjective allegations was patently wrong, for the ALJ relied on inferences that were not logically based on specific findings or evidence. The Commissioner asserts that the ALJ did not, in fact, apply an inappropriate evidentiary standard because the language that the ALJ employed indicated that the ALJ found that some of Plaintiff's subjective allegations to have been consistent with evidence and others to be inconsistent with evidence. However, the Commissioner's argument is belied by the plain language of the ALJ's decision. The ALJ stated that "...the statements made by the claimant...concerning the intensity, persistence, and limiting effects of the claimant's symptoms are not entirely consistent with the medical evidence and the other evidence of record." (AR 19.) The ALJ stated that, for the ALJ to accept any of Plaintiff's subjective allegations, those subjective allegations needed to be entirely consistent with evidence. Contrary to the Commissioner's argument, this language did not state that the ALJ identified some allegations that were consistent with evidence and others that were inconsistent with evidence. Plaintiff was not required to meet this impermissibly heightened

evidentiary burden. The ALJ was required to apply the preponderance of the evidence standard. 20 C.F.R. § 404.953(a). *Accord Jones ex rel. Jones v. Chater*, 101 F.3d 509, 512 (7th Cir. 1996) (citation omitted). *See also, e.g., Minger v. Berryhill*, 307 F. Supp.3d 865, 872 (N.D. Ill. 2018)

The Commissioner also contends that the ALJ reasonably evaluated objective medical findings in concluding that Plaintiff's subjective allegations were not entirely consistent with evidence. The Commissioner maintains that the ALJ reasonably considered evidence that Plaintiff, at times, manifested symptoms while at other times Plaintiff was relatively symptom-free. The Commissioner further contends that the ALJ considered Plaintiff's objective medical imaging and found that the results of that imaging persuaded the ALJ to include specific functional restrictions in her assessment of Plaintiff's RFC.  The Commissioner claims that the ALJ considered that Plaintiff did not manifest muscle atrophy and that the lack of muscle atrophy suggested inconsistency with evidence. Clearly, however, the ALJ's impermissible lay medical speculation did not constitute substantial evidence that supported her rejection of Plaintiff's subjective allegations. *Stage v. Colvin*, 812 F.3d 1121, 1125 (7th Cir.2016); *Moon v. Colvin*, 763 F.3d 718, 722 (7th Cir. 2014). There is no evidence that the ALJ possessed the medical knowledge that permitted her to read the results of an MRI or x-ray and determine how much weight Plaintiff could lift and carry or how many hours in a day she could stand and walk. The Commissioner's reliance, like the ALJ's reliance, on an absence of evidence of muscle atrophy is similarly misplaced. SSR 16-3p explains that an absence of muscle wasting would be useful in finding that a claimant who alleged to have walked for only a few minutes a day for an entire year may have exaggerated her allegations. Plaintiff made no such allegation. Plaintiff testified that she ambulated with the assistance of a cane (AR 41) and that she suffered swelling in the legs.

(AR 62.) She informed Dr. Bacchus that she suffered pain in the knees when she walked. (AR 791.) Plaintiff never affirmed that she was unable to walk or that she only walked a few minutes each day. The ALJ's reliance on an absence of muscle atrophy, therefore, amounted to little more than an independent medical conclusion that was based on the ALJ's lay medical speculation. *Stage*, 812 F.3d at 1125; *Moon*, 763 F.3d at 722.

The Commissioner contends that the ALJ committed no error in relying on Plaintiff's treatment history to find that Plaintiff's subjective allegations were not entirely consistent with evidence. The Commissioner asserts that the ALJ recognized that Plaintiff did not always possess medical insurance and that this lack of insurance accounted for Plaintiff's failure to undergo surgery or receive specialized medical care. The Commissioner further contends that the ALJ recognized that Plaintiff's orthopedist did not believe that she was a candidate for surgery. *Id.* With regard to Plaintiff's mental impairments, the Commissioner contends that the ALJ correctly noted that Plaintiff was never psychiatrically hospitalized. However, with regard to Plaintiff's failure to obtain specialized medical care or to undergo surgery for much of the period in question, the Commissioner, like the ALJ, fails to recognize that a lack of medical insurance or an inability to afford medical treatment excuses a claimant for failing to aggressively pursue medical treatment. *Jelinek v. Astrue*, 662 F.3d 805, 814 (7th Cir. 2011). Plaintiff argues that the ALJ should have found that Plaintiff's lack of medical insurance was a factor that militated against finding her subjective allegations not entirely credible. Additionally, with regard to Plaintiff's orthopedist's belief that Plaintiff was not a candidate for surgery, the ALJ impermissibly assumed that this physician so opined because Plaintiff's spinal impairment was insufficiently severe and that Plaintiff exaggerated the extent to which this impairment produced pain and functional

limitations. The ALJ failed to explain if she considered that surgery may have been inappropriate given Plaintiff's specific impairments or that Plaintiff's orthopedist believed that Plaintiff would not benefit from surgical intervention. An ALJ may not simply assume that a particular treatment modality is appropriate for a particular impairment. *Myles v. Astrue*, 582 F.3d 672, 678 (7th Cir. 2009). Finally, with regard to Plaintiff's mental impairment, the Seventh Circuit has held that an ALJ may not find that a claimant's mental impairments do not produce severe or debilitating symptoms because a claimant has never been psychiatrically hospitalized, for "(t)he institutionalization of the mentally ill is generally reserved for persons who are suicidal, otherwise violent, demented, or (for whatever reason) incapable of taking even elementary care of themselves." *Voigt v. Colvin*, 781 F.3d 871, 876 (7th Cir. 2015).

The Commissioner contends that the ALJ's consideration of Plaintiff's activities of daily living were but one of many factors that the ALJ analyzed when the ALJ assessed Plaintiff's subjective allegations. The Commissioner argues, essentially, that any error that the ALJ committed in evaluating Plaintiff's activities of daily living was harmless, for the ALJ considered other evidence as well. However, where an ALJ evaluates a claimant's subjective allegations, an ALJ's error is harmless only"…when the trier of fact says that he would have made the same determination even if the questioned circumstances had been different from what he thought them to be and he gives an adequate reason for that back-up position." *Allord v. Barnhart*, 455 F.3d 818, 821 (7th Cir. 2006). Here, the ALJ did not state that she would have reached the same conclusion regarding Plaintiff's subjective allegations had she actually explained how Plaintiff's activities of daily living were inconsistent with her subjective allegations. For this reason, and the reasons discussed above, remand is necessary.

## Conclusion

On the basis of the foregoing, the decision of the ALJ is hereby REMANDED for further proceedings consistent with this Opinion .

Entered: March 11, 2019.

s/ William C.  Lee
William C. Lee, Judge
United States District Court
